INHABIT'S OF NEW-VINEYARD *versus* INHABIT'S OF PHILLIPS.

Where a town had relieved persons therein, who had fallen into distress, and legal notice thereof had been given to the town in which such persons had a legal settlement, if, afterwards, another notice be given, the last notice will be no waiver of any right acquired under that previously given.

ASSUMPSIT, for the support of paupers alleged to have their settlement in the defendant town. The writ is dated January 6, 1857. The case is thus stated by the parties:—

" The overseers of the poor of the town of New-Vineyard legally notified the overseers of the poor of the town of Phillips, January 12, 1855, that the alleged paupers, named in the plaintiffs' declaration, had fallen into distress and become chargeable in New-Vineyard as paupers of said Phillips. Which notice was not answered by the overseers of the poor of said Phillips, in terms rejecting said paupers, as required by law. That the overseers of the poor of said New-Vineyard, subsequently, to wit, April 11, 1855, gave the overseers

of the poor of said Phillips, a new and independent notice that said paupers had fallen into distress, &c., in New-Vineyard, without, in any way, referring to their former notice, which last notice was seasonably and properly answered according to law, rejecting said paupers, by the overseers of the poor of said Phillips; that, again, the third time, the overseers of the poor of New-Vineyard, on the twenty-first day of April, 1856, gave the overseers of the poor of said Phillips a new and independent notice, that said paupers had fallen into distress, &c., in New-Vineyard, without, in any way, referring to either of their former notices. Which last and third notice was not seasonably answered by the overseers of the poor of said Phillips. But the inhabitants of Phillips, by James E. Thompson, one of the selectmen and overseers of the poor of said Phillips, afterwards, to wit, September 18, 1856, settled and paid the inhabitants of New-Vineyard the sum of $59,56, being in full for the removal of said paupers and their support from January 21, 1856, to July 5, 1856; which settlement was in full for all claims of the inhabitants of New-Vineyard against the inhabitants of said Phillips, on account of said paupers, from said twenty-first day of January, 1856, up to the date of the plaintiffs' writ in said action. Said settlement was not intended to deprive said defendants of any legal rights they acquired, or of any presumptions in their favor, by the means of the giving of said second and third notices to the overseers of the poor of said Phillips, by the overseers of the poor of said New-Vineyard; nor to deprive the inhabitants of said New-Vineyard of any of their legal rights to collect of the defendants the expense of supplies furnished said paupers by them prior to said 21st day of January, 1856, if they did not, by operation of law, waive said legal rights by reason of the giving of said second and third notice as aforesaid.

"If the full Court shall be of opinion, upon the foregoing statement of facts, that the plaintiffs are entitled by law to maintain their said action, upon proof of the legal settlement of said paupers in said Phillips, and upon proof of furnishing

the supplies, as alleged in their said writ, then the defendants are to be defaulted, and the amount of damages to be audited and determined upon by some suitable person, to be appointed by said Court. But if the Court should be of the opinion that the plaintiffs are not entitled by law to maintain this action, then the plaintiffs are to become nonsuit."

*S. H. Lowell*, for the defendants, contended : —

1. That the first notice given by plaintiffs to defendants was waived by plaintiffs' giving a new and independent notice of April 11, 1855, and both of these notices were waived by the plaintiffs' giving the notice of the date of April 21, 1856. *Kennebunk* v. *Buxton*, 26 Maine, 61.

2. Because all cause of action which the plaintiff had against the defendants, under or by reason of their last notice, viz., the notice of April 21, 1856, including the costs and expenses of removing said paupers, was settled, paid and extinguished by the defendants, Sept. 18, 1856, said settlement was in full for all claims of the plaintiffs against the defendants, for or on account of said paupers, for a space of time extending three months back of said notice, and forward to the date of plaintiffs' writ. The plaintiffs, therefore, having, by operation of law, as well as by manifest intention, waived their first and second notices, and having received payment in full for all their claims, by reason of or under their third and last notice, had no cause of action left against the defendants at the time this action was commenced, and must, according to the agreement of the parties, become nonsuit.

Again. The three notices were all exactly alike in substance, differing only in their dates by being given by different boards of overseers. And each of said notices would have been good and continued valid had it alone been the only notice given.

It will not be seriously contended that all three of said notices were good, April 21, 1856, and that the plaintiffs had three causes of action accruing Jan. 12, 1855, April 11, 1855, and April 21, 1856, respectively. The plaintiffs caused said

paupers to be removed between April 21, 1856, and July 5, 1856. This they did under their last notice, thus electing which notice they should consider valid, and, having so elected which they should be required to do, they are now estopped by their own acts, and by operation of law, to claim any benefit from either (or both,) of their first and second notices, and cannot, therefore, maintain this action.

*S. Belcher* argued for the plaintiffs, and cited *Green* v. *Taunton*, 1 Maine, 228; *Palmer* v. *Dana*, 9 Met. 587; R. S. of 1841, c. 32, § 43.

The COURT *held* that no good reason had been shown why the plaintiff should not recover; and directed an entry of *default.*                    *Defendants to be heard in damages.*

TENNEY, C. J., HATHAWAY, CUTTING, MAY, GOODENOW, and DAVIS, J. J., concurred.